[No. B150981. Second Dist., Div. One. Aug. 2, 2002.]

EVEREST INVESTORS 8 et al., Plaintiffs and Appellants, v. WHITEHALL REAL ESTATE LIMITED PARTNERSHIP XI, Defendant and Respondent.

**COUNSEL**

Kendig & Ross, Fainsbert Mase & Snyder and Dennis A. Kendig for Plaintiffs and Appellants.

Sullivan & Cromwell, Steven W. Thomas and Mark H. Forrester for Defendant and Respondent.

## OPINION

**VOGEL (MIRIAM A.), J.—** The question on this appeal is whether a nonfiduciary defendant can be liable for conspiring with a fiduciary defendant to breach the fiduciary's duty to the plaintiff. The answer, in our view, is sometimes yes and sometimes no. When the nonfiduciary is an agent or employee of the fiduciary, the nonfiduciary is entitled to the benefit of the "agent's immunity rule" (and thus not liable on a conspiracy theory) unless the nonfiduciary was acting for its own benefit. If the nonfiduciary is neither an employee nor agent of the fiduciary, it is not liable to the plaintiff on a conspiracy theory because a nonfiduciary is legally incapable of committing the tort underlying the claim of conspiracy (breach of fiduciary duty).[1] Since the answer in this case is "no," we affirm the order of dismissal that is the subject of this appeal.

### FACTS

#### A.

Everest Investors 8, LLC (and related entities included in our references to Everest) sued McNeil Investors, Inc. (and related individuals and entities included in our references to the General Partners, all of whom were in one way or another involved with several McNeil limited partnerships), and Whitehall Real Estate Limited Partnership XI (the only respondent on this appeal), alleging causes of action for breach of fiduciary duty, unfair competition, and constructive fraud.

Reduced to its essentials, the complaint alleges that Everest was a limited partner in several McNeil partnerships. In 1995, some of the McNeil partnerships' limited partners (but not Everest) sued the General Partners for breach of fiduciary duty, alleging they had acted for their own benefit and not for the benefit of the partnerships. In 1998, in an attempt to settle the 1995 lawsuits, the General Partners "conspired among themselves and with Whitehall to sell [the] McNeil partnerships to Whitehall for significantly less than the fair market value of the assets of such partnerships." Instead of soliciting bids and selling to the highest bidder or otherwise maximizing the return on the limited partners' investments as required by the General Partners' status as fiduciaries, the General Partners (acting with Whitehall's

---

[1]We do not mean to include within this statement of the rule those cases where the "nonfiduciary" does *not* owe the fiduciary duty owed by his coconspirator but *does* owe a separate and distinct fiduciary duty—for example, where a client alleges that his former lawyer, who owed a fiduciary duty to his client, conspired with a trustee or some other person who owed a distinct fiduciary duty to the client.

"knowing cooperation") "negotiated and conspired with Whitehall to sell all of the limited partnerships to Whitehall for less than [their] fair market value . . . and in a manner calculated to benefit the [G]eneral [P]artners and Whitehall at the expense of the limited partners."

More specifically, the General Partners and Whitehall "breached their fiduciary duties to Everest" by refusing to consider higher bids for the assets purchased by Whitehall, structuring the Whitehall transaction to benefit the General Partners at the expense of the limited partners, and improperly allocating the proceeds of the sale. As a result of these and similar breaches, Everest's share of the proceeds was reduced by about $3 million. In separate causes of action, Everest alleges that the same acts constituted an unfair business practice and constructive fraud.[2]

## B.

Whitehall demurred on the ground that (as "an arms' length third-party acquirer") it did not owe a fiduciary duty to Everest and thus could not be "held liable for conspiring to breach the [General Partners'] fiduciary duty to [Everest] as a matter of law." (See *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1101 [3 Cal.Rptr.2d 236] [to plead a cause of action for breach of fiduciary duty, there must be a fiduciary relationship]; *Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415 [98 Cal.Rptr.2d 176] [only a fiduciary or confidential relationship can support a claim of constructive fraud].) As Whitehall observed, there is no allegation that it owed a fiduciary duty to Everest, only that such a duty was owed by the General Partners to the limited partners. It adds nothing, claimed Whitehall, that Everest alleged a conspiracy between the General Partners and Whitehall—because a nonfiduciary cannot conspire to breach a duty owed only by a fiduciary. (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1597-1598 [47 Cal.Rptr.2d 752].)

---

[2]The only allegation added to the unfair business practice cause of action (in which Everest asks for the same $3 million) is this: "The foregoing acts constitute unlawful, unfair, and/or fraudulent conduct and therefore violate Business [and] Professions Code [section] 17200 et seq. The majority of the other limited partners already have released similar claims by accepting the settlement of the class action that led to the bulk sales of the partnerships that are the basis for this action. Everest opted out of the class action. As a result, Everest is entitled to an order disgorging from Defendants the percentage of their improperly gained profits from their self-dealing transactions that is commensurate with Everest's percentage interest in the partnerships." The only allegation added to the constructive fraud cause of action is this: "In committing the foregoing facts [*sic*], Defendants benefited financially at the expense of Everest and other limited partners to whom they owed a fiduciary duty and/or to whom their coconspirators owed a fiduciary duty. As a result, they are liable for constructive fraud. [¶] Because Defendant Whitehall conspired with the other fiduciary defendants in committing the foregoing tortious acts, a constructive trust should be imposed on the funds it . . . received so that they can be disgorged and returned to Everest."

In reply, Everest conceded that Whitehall did not owe an independent fiduciary duty to Everest (and did not claim that Whitehall was the agent or employee of the General Partners) but insisted that Whitehall could nevertheless be liable for its conspiracy with the General Partners because Whitehall was acting to further its own interests.

The trial court sustained the demurrer without leave to amend, finding that a cause of action for civil conspiracy does not arise if the alleged conspirator, although a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing. Everest appeals from the order of dismissal thereafter entered.[3]

### DISCUSSION

### A.

Relying on *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44 [260 Cal.Rptr. 183; 775 P.2d 508], Everest contends "Whitehall may be liable for conspiracy to commit breach of fiduciary duty and constructive fraud if it acted for its own advantage while conspiring with the [General Partners]." We disagree.

By its nature, tort liability arising from a conspiracy presupposes that the conspirator is legally capable of committing the tort—that he owes a duty to the plaintiff recognized by law and is potentially subject to liability for the breach of that duty. Standing alone, a conspiracy does no harm, engenders no tort liability, and does not per se give rise to a cause of action. It must be activated by the commission of an actual tort. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511 [28 Cal.Rptr.2d 475, 869 P.2d 454].) Relying on that rule, *Doctors' Co.* rejected an insured's effort to allege a conspiracy to violate Insurance Code section 790.03 against an insurer and the attorney (and expert) retained by the insurer to assist with the insured's defense against a third party's claim, explaining that a cause of action for civil conspiracy does not arise "if the alleged conspirator, though a participant in the agreement underlying the injury, *was not personally bound by the duty violated by the wrongdoing and was acting only as the*

---

[3]While this appeal was pending, the trial court granted the General Partners' motion for summary judgment. For that reason, Whitehall asks us to dismiss Everest's appeal. (See *In re Dani R.* (2001) 89 Cal.App.4th 402, 404 [106 Cal.Rptr.2d 926] [an appeal may be dismissed when it is mooted by subsequent events].) But Everest, in turn, has filed a notice of appeal from the judgment in favor of the General Partners, and this appeal is thus not moot. For that reason, Whitehall's motion is denied.

*agent or employee of the party who did have that duty."* (*Doctors' Co. v. Superior Court, supra,* 49 Cal.3d at pp. 41-42, 44, italics added; see also *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 576 [108 Cal.Rptr. 480, 510 P.2d 1032] [insurer's adjusters and attorneys are not liable on a theory of conspiracy to breach the implied covenant of good faith because the adjusters and attorneys are not parties to the insurance contract and because the agents and employees of a corporation cannot conspire with their corporate principal or employer when they act in their official capacities and not as individuals for their individual advantage].)

Everest construes *Doctors' Co., Gruenberg,* and *Applied Equipment* to authorize this suit against Whitehall for a conspiracy to breach the General Partners' fiduciary duty simply because Whitehall *was not* the agent or the employee of the General Partners and *was* acting for its own benefit as a party to the underlying contract. Everest misperceives the rule. In *Applied Equipment Corp. v. Litton Saudi Arabia Ltd., supra,* 7 Cal.4th 503, the Supreme Court clarified that, in deciding *Gruenberg* and *Doctors' Co.,* it had "relied on *two independent principles*: (1) the 'non-insurer defendants were not parties to the agreements for insurance; therefore, they [were] not, as such, subject to an implied duty of good faith and fair dealing'; and (2) duly acting agents and employees cannot be held liable for conspiring with their own principals (the 'agent's immunity rule')." (*Applied Equipment Corp.,* at p. 512, italics added.)

In the context of our case, this means (1) that the General Partners' agents and employees (if named as defendants) could not be liable for their employer's conspiracy because—absent allegations that they were acting for their own benefit—the "agent's immunity rule" protects them (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd., supra,* 7 Cal.4th at p. 512, fn. 4), *and* (2) that Whitehall cannot be liable for the General Partners' breach of their fiduciary duty because Whitehall, *which is neither an employee nor agent of the General Partners and which owed no fiduciary duty to Everest,* is legally incapable of committing the tort underlying the claim of conspiracy. (*Id.* at pp. 510-512.) As the Supreme Court put it in *Applied Equipment,* the "invocation of conspiracy does not alter th[e] fundamental allocation of duty. Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles." (*Id.* at p. 514.)

Since the only duty allegedly breached as a result of the alleged conspiracy is a fiduciary duty owed by the General Partners but not by Whitehall, Whitehall cannot be held accountable to Everest on a conspiracy

theory. (*Doctors' Co. v. Superior Court, supra,* 49 Cal.3d at p. 45.) Since only a fiduciary can be liable for constructive fraud (*Assilzadeh v. California Federal Bank, supra,* 82 Cal.App.4th at p. 415), Everest's constructive fraud claim cannot be pursued against Whitehall. Since Everest's unfair business practices cause of action is based entirely on the breach of fiduciary duty allegations, and since an unfair business practices claim requires proof that another law has been violated, the unfair business practices claim cannot be pursued. (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1137 [88 Cal.Rptr.2d 664].) Since Everest offers no additional facts that could be added to its complaint, it follows that Whitehall's demurrer was properly sustained without leave to amend. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1]; and see *Younan v. Equifax Inc.* (1980) 111 Cal.App.3d 498, 511, 516-517 [169 Cal.Rptr. 478] [insurer's agents liable "for conspiracy to commit actual fraud since they had a duty to abstain from injuring the plaintiff through express misrepresentation" independent of the insurer's duties, but *not liable* "for constructive fraud since that charge rested on a fiduciary duty of disclosure which was owed plaintiff only by the insurer itself"].)

## B.

The conspiracy rule we articulate in this case is based on our interpretation of the relevant Supreme Court cases. For the record, however, we note the existence of language in several Court of Appeal opinions that is not entirely reconcilable with our analysis. For example, in *Pierce v. Lyman, supra,* 1 Cal.App.4th at page 1106, Division Five of our court held that the attorneys for the former trustees of a testamentary trust (who clearly owed a fiduciary duty to their clients but not to the trust's beneficiary) nevertheless owed an undefined "independent" duty to the trust's beneficiary that was sufficient to support the beneficiary's cause of action for conspiracy to breach the former *trustees'* fiduciary duty—because the attorneys allegedly acted to advance their own interests.

In *Kidron v. Movie Acquisition Corp., supra,* 40 Cal.App.4th at pages 1597-1598, an action by the originator of a failed television series against his former partners and the proposed distributor of the series, Division Seven of our court rejected the plaintiff's "conspiracy to breach fiduciary duty" claim against the proposed distributor because the distributor did not owe a fiduciary duty to the plaintiff.

In *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 464, footnote 14 [80 Cal.Rptr.2d 329], where the claim

was that Merrill Lynch owed a direct duty to the City, not that it conspired to breach a duty, Division Four of the First Appellate District attempted to reconcile *Kidron v. Movie Acquisition Corp., supra,* 40 Cal.App.4th 1571, with *Pierce v. Lyman, supra,* 1 Cal.App.4th at pages 1103-1106, concluded that *Kidron* (which had nothing to do with agents or employees) should have acknowledged the "exception" to the rule on which *Pierce* was based (that an *agent* who acts for his own advantage cannot claim the privilege otherwise available to agents and employees), and suggested that a nonfiduciary who acts for his "individual advantage" can be liable for "aiding and abetting a breach of fiduciary duty."

In *Wolf v. Mitchell, Silberberg & Knupp* (1999) 76 Cal.App.4th 1030, 1033, 1039-1040 [90 Cal.Rptr.2d 792], an action by a trust's beneficiary against the trustee's attorneys where the only issue was standing, Division Four of our court cited *Pierce* and *Atascadero* to support its conclusion that the beneficiary, rather than the trustee, has standing to sue when the action is against third parties who actively participated in the trustee's breach of trust.

We see fruit salad where there should be separate stacks of apples and oranges. When an alleged conspirator is neither an agent nor an employee, we do not believe the "agent's immunity rule" has anything to do with the price of tomatoes. This immunity rule and its exception (when an agent acts for his "own individual advantage") are based on the proposition that a corporation cannot conspire with itself—because an agent or employee who is acting within the scope of his authority is (in the eyes of the law) one and the same "person" as the corporation. (*Black v. Bank of America* (1994) 30 Cal.App.4th 1, 6 [35 Cal.Rptr.2d 725] [it "is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy"].) It makes sense, therefore, to say that an agent who acts for his own advantage loses the immunity he would otherwise have vis-à-vis his principal and *can* be liable for conspiracy to interfere with his principal's contract or inducing the breach of his principal's contract. (E.g., *Applied Equipment Corp. v. Litton Saudi Arabia Ltd., supra,* 7 Cal.4th at p. 512, fn. 4; *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 24-25 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) But we do not see how the agent's unauthorized and self-serving act can make him liable to a third party for conspiracy to breach a fiduciary duty that he does not owe to anyone. (*Pierce v. Lyman, supra,* 1 Cal.App.4th at p. 1106; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, supra,* 68 Cal.App.4th at p. 464, fn. 14.)

Perhaps it is time for the Supreme Court to revisit these issues.

## DISPOSITION

The order of dismissal is affirmed. Whitehall is entitled to its costs of appeal.

Spencer, P. J., and Ortega, J., concurred.